IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DANIEL HAMILTON               PLAINTIFF

VS.         CASE NO. 4:17CV00352 PSH

NANCY A. BERRYHILL, Commissioner,
  Social Security Administration         DEFENDANT

**ORDER**

  Plaintiff Daniel Hamilton ("Hamilton") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny his claim for Supplemental Security Income ("SSI").[1] Hamilton contends the Administrative Law Judge ("ALJ") erred in: (1) assessing his mental limitations, particularly by failing to appropriately credit the opinion of treating physician Dr. Clements ("Clements"); and (2) assessing his physical limitations. The parties ably summarized the medical records and the testimony given at the administrative hearing, which was conducted on March 28, 2016. The Court has carefully reviewed the record to determine whether there is substantial evidence to support Berryhill's decision. 42 U.S.C. § 405(g). The relevant period to be considered is from March 18, 2013, Hamilton's alleged onset date, through May 19, 2016, the date the Commissioner issued her decision.

  *The Administrative Hearing:* Hamilton was 47 years old at the time of the administrative

---

[1] Hamilton also filed an application for disability insurance benefits ("DIB"), but withdrew this application at the outset of the administrative hearing. (Tr. 47).

1

hearing. He testified he had an eleventh grade education and earned a GED, though he "sometimes" had trouble reading. (Tr. 50). Hamilton indicated he lived with his two children, ages seven and eleven, and his mother-in-law. He stated he has a driver's license, and smokes about one third of a pack of cigarettes daily, a significant decrease from a previous five pack a day habit. According to Hamilton, he no longer drinks alcohol nor takes drugs, having last used illegal drugs in 2004. Hamilton described numerous past jobs, the most recent of which was working as a chicken marinater for Tyson's in 2006. Hamilton testified that he had never been fired from employment, and that he quit his most recent job due to his depression. He described daily activities of taking care of his children, doing some cooking, laundry, and grocery shopping, and resting for 2-3 hours daily due to depression. Hamilton said he attended school functions and church, and fished from the bank on weekends.

As for work, Hamilton stated his depression and hearing voices prevented him from employment. He also described neck and back pain, and noted prior neck and back surgeries in 2006 and 2007. He indicated he takes only Tylenol for physical pain, and would have problems being around people on a job site, as well as problems maintaining his concentration. Hamilton testified to seeing Clements for about a year prior to the administrative hearing, to seeing a therapist every two weeks, and to taking prescription medications with no side effects for his mental impairments. Hamilton also stated he has asthma, and has been treated with an inhaler since he was sixteen years old. According to Hamilton, he sometimes shakes after using the inhaler and is required to stop and wait for the shaking to cease. Hamilton estimated he could stand for five minutes, walk for five minutes, and sit for thirty minutes or less before back pain would occur. Hamilton stated he could carry no more than five pounds. (Tr. 49-70).

A vocational expert, David Elmore ("Elmore"), testified Hamilton could not perform any of his past jobs. The ALJ asked Elmore to assume a hypothetical worker of Hamilton's age and background, with the ability to do light work with numerous restrictions.[2] Elmore indicated such a worker could perform the jobs of production assembler and sewing machine operator. A second hypothetical question, assuming the worker would be off task 25% of the time, would miss work once a week, and would require additional daily breaks, was posed, and Elmore stated there would be no available jobs for such a worker. (Tr. 72-76).

*The ALJ's Decision:* In her May 19, 2016, decision, the ALJ found Hamilton had severe impairments of degenerative disc disease with residuals of cervical and lumbar surgery, asthma, post traumatic stress disorder ("PTSD"), and depression. The ALJ held Hamilton did not meet a listed impairment. In conjunction with the analysis regarding a listing, the ALJ considered the "paragraph B" criteria and found the following: Hamilton has mild limitations in activities of daily living, has moderate limitations in social functioning, moderate difficulties with regard to concentration, persistence or pace, and had no episodes of decompensation. The ALJ determined Hamilton had the residual functional capacity ("RFC") to perform light work with restrictions which mirrored those contained in her initial hypothetical question posed to Elmore and listed in footnote one herein.

The ALJ thoroughly reviewed the medical findings by both treating and consulting examiners, and also addressed the findings of the state agency physicians. In reaching her RFC conclusion, the ALJ ultimately assigned "great weight" to the findings of Dr. Wilkins, who performed a 2013

---

[2] The restrictions were: able to occasionally reach overhead, limited to only moderate exposure to dust, odors, gases, fumes, with only occasional contact with supervisors, co-workers, and the general public. Further, the hypothetical worker would be limited to unskilled work. (Tr. 75).

consultative physical examination, "great weight" to the findings of Dr. Spataro, who performed a 2012 consultative physical examination, "great weight" to the findings of Dr. Faupel, who performed a 2014 consultative psychological examination, and "little weight" to the Medical Source Statement of Clements, the treating psychologist. (Tr. 34-35). The ALJ explained that little weight was given to Clements' opinion "because such limitations are inconsistent with the claimant's clinical presentation and treatment history." (Tr. 35). The ALJ also assigned "significant weight" to the opinions offered by the state agency consultants. (Tr. 35). Relying upon the testimony of Elmore, the ALJ concluded Hamilton was not disabled. (Tr. 27-37).

*Medical Evidence During the Relevant Period:* In April 2013 Hamilton saw his treating physician, Dr. Citty ("Citty"), and was diagnosed with chest pain and cervical fusion (old). (Tr. 921). Hamilton visited Citty again in October and November 2013, with unremarkable findings. (Tr. 917, 919). In May 2013 Dr. Wilkins ("Wilkins") performed a consultative physical examination, finding a limited range of motion of the cervical spine. Wilkins diagnosed Hamilton with cervicalgia and lumbago, but indicated Hamilton was able to sit, walk, and/or stand for a full workday, as well as lift/carry without limitations. (Tr. 867-870).

In February and April 2014 Hamilton was treated at local medical centers for upper respiratory infection, acute bronchitis, and asthma. (Tr. 875-882, 1093-1096).

A consultative mental evaluation was performed by Dr. Ron Faupel ("Faupel") in June 2014. Faupel diagnosed Hamilton with persistent depressive disorder, anxious distress, and personality disorder (not otherwise specified). Among other things, Faupel noted Hamilton could drive, shop, make transactions, handle money, cook, clean house, do laundry, make and keep appointments with reminders, communicate effectively, and attend to his activities of daily living. Faupel indicated

4

Hamilton had problems following instructions, which should be simple and written, and that his ability to tolerate normal work related demands was moderately impaired due to anxiety and low stress tolerance. Further, Faupel found Hamilton's ability to sustain attention on tasks and persist with difficult tasks, and his ability to maintain pace on tasks, was moderately impaired due to anxiety and poor concentration. (Tr. 1099-1101).

In September 2014 Hamilton was first seen at Clements' Wellness Center, where Pam Daniel ("Daniel"), LCSW, recorded a diagnosis of MDD (major depressive disorder) without psychotic features, anxiety disorder (NOS), and chronic PTSD. (Tr. 1120-1122). Hamilton returned for counseling with Daniel later that month, in October and December 2014, and in March 2015. (Tr. 1106-1108). Clements, a psychiatrist, saw Hamilton in October 2014, and changed his medications. Clements found Hamilton to be dealing with anxiety symptoms, insomnia, and depression. He stated that Hamilton was adequately dressed, with adequate eye contact, regular rate and rhythm of speech, congruent affect, and goal-directed and linear thought-processes, but feeling overwhelmed and anxious, with limited insight and judgment. (Tr. 1118). Clements next saw Hamilton in March 2015, finding he was "doing better" without panic attacks but still complaining of anxiety symptoms. (Tr. 1115). Clements reported Hamilton's ability to cope with stressors was "fair." (Tr. 1115). Hamilton reported to Clements that he was getting along well with his children and having less mood swings. Clements' plan was to increase medications and have Hamilton return in three months. Hamilton saw Clements three more times during the relevant period – in June and September 2015 and in January 2016. (Tr. 1128-1131, 1144-1147, & 1174-1177). On all three occasions Clements continued and/or altered Hamilton's medications. In March 2016, Clements executed a Medical Source Statement indicating Hamilton was extremely limited in ten areas of

5

functioning, markedly limited in five areas, and moderately limited in five areas. There were no areas in which Clements found Hamilton had no or mild limitations. (Tr. 1182-1183). Clements also opined Hamilton would be absent from work more than three days a month due to his mental impairments.[3]

Beginning in May 2015, Hamilton frequently was seen by Donald Wilson ("Wilson") for his mental issues. Wilson's treatment notes identify himself as an "LPE," a licensed psychological examiner. In his brief, Hamilton refers to Wilson as "Dr. Wilson, Ph.D., LPE." Docket entry no. 11, page 8. Hamilton also describes Wilson as his therapist. Docket entry no. 11, page 11. Wilson saw Hamilton approximately every month in 2015 and approximately twice a month in 2016 prior to the ALJ's decision. Wilson treated Hamilton for agoraphobia, anxiety, stress, depression, and PTSD. Wilson's treatment notes reflect Hamilton was depressed, but typically his insight was intact and his thought processes and thought content were not impaired. There were occasions when Wilson found impaired insight, such as in December 2015 and January 2016. (Tr. 1162, 1171). Wilson also noted Hamilton's mood was despairing and his depression worse over the prior two weeks when seen in March 2016. (Tr. 1205, 1207). As previously noted, Wilson signed the March 2016 Medical Source Statement submitted by Clements.

We now address Hamilton's arguments.

**ALJ Error in Determining Mental Limitations:**

As previously noted, the ALJ found Hamilton had severe impairments of PTSD and depression, and the ALJ assessed him with the ability to perform unskilled work with occasional

---

[3] Clements executed the Medical Source Statement, but it also was signed by Donald Wilson, Ph.d., LPE. (Tr. 1183).

contact with supervisors, coworkers, and the general public. Hamilton contends the ALJ erred in discounting treating physician Clements' Medical Source Statement showing him to have dramatic mental deficits which would prevent him from working.[4] Hamilton is correct that a treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. However, such an opinion may be discounted or even disregarded where other medical assessments are supported by better or more thorough medical evidence. *Fentress v. Berryhill*, 854 F.3d 1016 (8th Cir. 2017). Here, the ALJ pointed to other evidence – the June 2014 consultative examination of Faupel, finding Hamilton had only moderate limitations. The ALJ gave great weight to Faupel's findings, noting them to be consistent with Faupel's observations and with Hamilton's "generally benign clinical presentation." (Tr. 35). Addressing Clements' Medical Source Statement, the ALJ assigned it little weight "because such limitations are inconsistent with the claimant's clinical presentation and treatment history." (Tr. 35). Substantial evidence supports the ALJ's treatment of the medical evidence and opinions. The ALJ discussed the treatment history, including the findings from Wilson's Clarity Health and Wellness Clinic, which the ALJ summarized as generally benign findings. The treatment history also includes the May 2013 findings of consultative examiner Wilkins, showing that Hamilton reported trouble sleeping at night but "denies mood changes, depression, suicidal ideation, nervousness, anxiety, difficulty concentrating." (Tr. 868). Further, the treatment history shows no mental health care was sought by Hamilton until roughly a year and a half after the onset date. (The onset date was March 18, 2013. Hamilton saw Clements

---

[4] Although Wilson also signed the Medical Source Statement, the weight of the opinion rests on Clements, the treating psychiatrist, rather than on Wilson, the therapist. *See Lacroix v. Barnhart*, 465 F.3d 881 (8th Cir. 2006) (therapist are not themselves "acceptable medical sources" whose opinions are entitled to greater weight than non-treating consultants and examining physicians.)

in September 2014. Faupel's consultative examination, done at the behest of the social security administration, was conducted in June 2014.) In summary, substantial evidence supports the ALJ's evaluation of the various medical sources, their treatment notes, and their opinions. There is no merit to Hamilton's challenge to the ALJ's treatment of his mental impairments.

**ALJ Error in Determining Physical Limitations:**

The ALJ found Hamilton capable of unskilled light work with the physical restrictions of only being able to occasionally reach overhead, and only moderate exposure to dust, odors, gases, and fumes. Hamilton contends the ALJ erred in assigning great weight to the findings of consultative examiners Spataro and Wilkins.

Spataro, who performed the evaluation in January 2012, prior to the relevant period, diagnosed Hamilton with chronic neck, lower back, and thoracic back pain with radiculopathy and moderately diminished range of motion, obesity, and mild partially corrected myopia. Spataro concluded Hamilton had "moderate limitations to sit, walk, and stand for a full workday secondary to chronic spinal pain . . . He has moderate limitations to routinely lift and carry heavy objects secondary to same." (Tr. 676-679).

Wilkins examined Hamilton in May 2013 and found he did not have full range of motion of the cervical spine. Wilkins opined Hamilton "should be able to sit, walk, and/or stand for a full workday. Claimant should be able to lift/carry objects without limitations." (Tr. 867-870).

Hamilton faults the ALJ for failing to incorporate all of Spataro's findings and opinions into his RFC assessment. He also faults the ALJ for assigning great weight to Wilkins' report because Wilkins found a limited range of motion but nevertheless found him capable of working without significant limitations.

8

There is no error regarding the weight given to Spataro and Wilkins. Hamilton argues that the ALJ could not give "great weight" to both Spataro and Wilkins because their findings were not identical. E.g., Spataro found Hamilton to have moderate lifting limitations while Wilkins found none. However, the ALJ was not required to wholly embrace every detail of one physician's findings to the exclusion of the other's. It "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Here, Spataro and Wilkins[5] differed regarding Hamilton's ability to lift. The ALJ, generally crediting both physicians, determined Hamilton could perform light work with restrictions. It appears that the ALJ, on the specific issue of Hamilton's lifting capabilities, favored Wilkins to a slight degree over Spataro's findings. This is an acceptable performance of the ALJ's duty in determining a claimant's RFC. There is no merit to Hamilton's argument of error regarding his physical limitations.

In summary, substantial evidence supports the determinations reached by the ALJ. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is amply satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Berryhill is affirmed and

---

[5] We have previously noted that Spataro's report was from 2012 and Wilkins' from about a year and a half later. Spataro references only one imaging report, while Wilkins mentions three images he examined. (Tr. 677, 869). Thus, Wilkins was working with the benefit of additional time and additional information.

Hamilton's complaint is dismissed with prejudice.

IT IS SO ORDERED this 26th day of January, 2018.

_____
UNITED STATES MAGISTRATE JUDGE